306 P.3d 71

**Bill and Sue BEVERAGE, husband and wife, Plaintiffs/Appellants,**

**v.**

**PULLMAN & COMLEY, LLC; D. Robert Morris, an individual, Defendants/Appellees.**

**No. 1 CA–CV 12–0173.**

Court of Appeals of Arizona, Division 1, Department C.

April 25, 2013.

---

Beus Gilbert PLLC By Leo R. Beus, Abigail Terhune, Erin McGuinness, Scottsdale, Attorneys for Appellants.

Quarles & Brady LLP By Don P. Martin, Michael S. Catlett, D. Cody Huffaker, Phoenix, Attorneys for Appellees.

## OPINION

JOHNSEN, Judge.

¶ 1 We hold in this case that a Connecticut law firm that accepted $50,000 in legal fees for issuing an opinion letter to an Arizona resident in connection with a tax shelter transaction is subject to suit in Arizona after the tax shelter failed. We accordingly reverse the superior court's dismissal for lack of personal jurisdiction and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

■ ¶ 2 Bill Beverage, an Arizona resident, heard from his local accountant, Randy Fitzpatrick, of an opportunity to invest in a tax shelter promoted by Chenery Associates, a financial services firm.[1] In mid-December 2001, Fitzpatrick, as Beverage's agent, and Chenery employees telephoned D. Robert Morris, managing partner of Pullman & Comley, LLC, a Connecticut law firm, to discuss whether Pullman would issue an opinion letter to Beverage supporting the tax shelter.

¶ 3 Pullman is a law firm organized and located in Connecticut, without an office in Arizona or any attorneys licensed to practice in Arizona. By Morris's account, he told Fitzpatrick and the others on the December 2001 call that "Pullman would be interested in providing an opinion letter," but could not commit without completing its research into the matter. One week later, Morris sent to

Fitzpatrick in Arizona a letter enclosing Pullman's brochure and stating, "I look forward to working with you."

¶ 4 Beverage completed the tax shelter transaction in late December 2001. In an affidavit, he averred he entered the transaction "in reliance on my understanding that [it] was a legal and legitimate business deal and that a favorable tax opinion letter would be forthcoming." Morris spoke by telephone with Fitzpatrick twice in mid-March 2002 about "the factual assumptions underlying Pullman's opinion letter." In early April, Morris sent Fitzpatrick a client representation letter for Beverage to sign. The letter formalized the attorney-client relationship between Pullman and Beverage for preparation of a tax opinion letter in consideration of a $50,000 fee. Beverage executed the representation letter and sent the law firm a check for $50,000.

¶ 5 The 58–page opinion letter was drafted in Connecticut by lawyers who are not admitted to practice in Arizona. Once Morris received Beverage's signed representation letter on April 12, he forwarded the opinion letter to Fitzpatrick. The opinion letter, addressed to Beverage, concluded the tax shelter was legal and legitimate under federal tax law. In reliance on the letter, Beverage and his wife declared substantial losses related to the tax shelter on their federal income tax return.

¶ 6 One year later, the Internal Revenue Service audited the Beverages; Morris spoke with Fitzpatrick twice by phone about the audit. The government ultimately disallowed the tax losses the Beverages had claimed. The Beverages incurred substantial legal fees during the audit and, in the end, were assessed deficiencies totaling more than $3,000,000. The Beverages filed suit in Arizona against Pullman and Morris (collectively, "Pullman Defendants") and Fitzpatrick's firm, asserting claims of civil racketeering, fraud in various forms, breach of fiduciary duty, aiding and abetting fraud and breach of

---

1. When, as here, the superior court dismisses for lack of personal jurisdiction without conducting an evidentiary hearing, we view "the facts in the light most favorable to the plaintiffs but accept[ ] as true the uncontradicted facts put forward by the defendants." *Planning Group of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.,* 226 Ariz. 262, 264, ¶ 2, n. 1, 246 P.3d 343, 345 (2011).

fiduciary duty, conspiracy, professional malpractice and negligent misrepresentation. The Pullman Defendants moved to dismiss for lack of personal jurisdiction. Over the Beverages' opposition, the superior court granted the motion.

¶ 7 The Beverages timely appealed the superior court's order of dismissal entered pursuant to Arizona Rule of Civil Procedure 54(b). We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1) (West 2013).[2]

## DISCUSSION

### A. Legal Principles.

¶ 8 Arizona law permits "long-arm" exercise of personal jurisdiction to the greatest extent allowable under the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Planning Group of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.,* 226 Ariz. 262, 265, ¶ 12, 246 P.3d 343, 346 (2011). Personal jurisdiction may be either general or specific. *Id.* at 265, ¶ 13, 246 P.3d at 346. A state may exercise general jurisdiction over non-residents "whose activities in the state are 'systematic and continuous' " or specific jurisdiction "over a defendant who has sufficient contacts with the state to make the exercise of jurisdiction 'reasonable and just' with respect to that claim." *Id.* (citation omitted). We deal here with specific personal jurisdiction; the parties agree the Pullman Defendants do not have such continuous and systematic contacts with Arizona to be subject to general personal jurisdiction in this state.

¶ 9 Arizona may exercise specific personal jurisdiction over an out-of-state defendant when the aggregate of the defendant's contacts with this state demonstrate (1) purposeful conduct by the defendant targeting the forum, rather than accidental or casual contacts or those brought about by the plaintiff's unilateral acts, (2) a nexus between those contacts and the claim asserted and (3) that exercise of jurisdiction would be reason-

able. *Id.* at 266, 270, ¶¶ 16, 25, 37, 246 P.3d at 347, 351; *Williams v. Lakeview Co.,* 199 Ariz. 1, 4, ¶ 11, 13 P.3d 280, 283 (2000).

¶ 10 To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must offer "facts establishing a *prima facie* showing of jurisdiction." *Arizona Tile, L.L.C. v. Berger,* 223 Ariz. 491, 493, ¶ 8, 224 P.3d 988, 990 (App.2010). The burden then "shifts to the defendant to rebut the showing." *Id.* We review *de novo* the superior court's ruling on personal jurisdiction. *Id.*

### B. Purposeful Conduct Targeting Arizona.

¶ 11 The Pullman Defendants' contacts with Arizona are grounded in their attorney-client relationship with Beverage. They accepted a telephone call from Beverage's Arizona agent, sent promotional materials about the law firm to Beverage's agent in Arizona, then affirmatively agreed to represent Beverage, knowing he lived in Arizona. In connection with that representation, the Pullman Defendants accepted Beverage's request that they analyze the *bona fides* of the Chenery tax shelter, then drafted and issued an opinion letter to Beverage in Arizona, knowing that Beverage would rely on the letter in filing his federal income tax return from Arizona, all in exchange for a $50,000 fee.[3]

¶ 12 Guided by the supreme court's analysis in *Planning Group,* we conclude Beverage offered sufficient evidence that the Pullman Defendants engaged in purposeful conduct for which they reasonably could expect to be haled into an Arizona court. In *Planning Group,* the defendant California company sent a solicitation document to the Arizona investor; "extensive[ ]" telephone calls, emails, letters and faxes then ensued between the California company and the Arizona investor. 226 Ariz. at 264, ¶ 4, 246 P.3d at 345. After an in-person meeting in Los Angeles, the California company sent a letter setting out the "basic propositions"

---

2. Absent material revision after the relevant date, we cite a statute's current version.

3. The Pullman opinion letter expressly did not address any state-tax issues, and in his motion to dismiss, Beverage did not claim to have relied on the letter in filing his Arizona income tax returns.

on which a transaction could proceed, to which the Arizona investor agreed in writing. *Id.* at 265, ¶¶ 6–7, 246 P.3d at 346. Payments of $190,000 by the Arizona investor followed. *Id.* at ¶ 7.

¶ 13 The court directed that the defendant's various contacts with the state must "be analyzed not in isolation, but rather in totality." *Id.* at 269, ¶ 29, 246 P.3d at 350. It concluded with "little difficulty" that the California defendant's communications with the Arizona investor, on which the Arizona investor's claims were based, demonstrated "purposeful direction" by the defendant sufficient to establish personal jurisdiction in Arizona. *Id.* at ¶ 31.[4]

¶ 14 The Pullman Defendants argue that an attorney-client relationship with an Arizona client, by itself, is not sufficient to establish personal jurisdiction. *See Sher v. Johnson,* 911 F.2d 1357, 1363 (9th Cir.1990). But in the cases the Pullman Defendants cite, jurisdiction arguably turned on the locus of the representation. That is, the cases hold that a client's home state does not necessarily acquire jurisdiction over an out-of-state law firm the client retains to represent him in the other state. *See, e.g., id.* at 1362–63 (Florida law firm represented California client in Florida criminal proceeding); *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226–27 (8th Cir.1987) (client's home state of South Dakota lacked jurisdiction over New York law firm in suit related to representation in Maryland litigation); *Mayes v. Leipziger,* 674 F.2d 178, 185 (2d Cir.1982) (client's home state of New York lacked jurisdiction over California law firm in suit related to California representation); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.,* 638 F.Supp.2d 1, 9 (D.D.C.2009) (no jurisdiction in client's home forum over Netherlands law firm in suit related to legal work and representation performed in the Netherlands).

¶ 15 The situation is different when, as here, the out-of-state law firm has provided representation or services directed toward the forum state. In *Vig v. Indianapolis Life Insurance Co.,* 384 F.Supp.2d 975 (S.D.Miss. 2005), a Pennsylvania law firm drafted an opinion letter addressed to a Mississippi investor and gave the letter to its California-based client for delivery to the investor in Mississippi. *Id.* at 980. Because the law firm knew that the letter was to be given to the Mississippi resident, jurisdiction was proper in that state. *Id.*

¶ 16 The same outcome followed in *Mirotznick v. Sensney Davis & McCormick,* 658 F.Supp. 932 (W.D.Wash.1986), when bond purchasers brought suit in Washington against Idaho law firms that issued opinion letters to their Idaho clients, knowing the clients would forward the opinion letters to the bond issuer and its counsel in Washington. *Id.* at 942–43. Because the opinion letters were written to be delivered to the bond issuer in Washington, the court concluded the law firms "should have reasonably expected to have been haled into court [in Washington] to answer for their actions." *Id.* at 943. *See Olson v. Jenkens & Gilchrist,* 461 F.Supp.2d 710, 724 (N.D.Ill.2006) (Illinois had jurisdiction over Michigan law firm that had repeated communications with Illinois law firm "via telephone, email, fax, and written correspondence in order to help draft the opinion letters for the tax shelter strategy at issue"); *Resolution Trust Corp. v. Farmer,* 836 F.Supp. 1123, 1128–29 (E.D.Pa.1993) (law firm that issued opinion letters on behalf of borrower to be given to out-of-state lender was subject to jurisdiction in lender's home state); *Wallace v. Frank,* 662 F.Supp. 876, 879 (E.D.Mich.1987) (Michigan had jurisdiction over Pennsylvania accounting firm that provided federal tax documents and financial statements to plaintiffs in Michigan).[5]

¶ 17 The Pullman Defendants cite other cases that, by contrast to the cases just cited,

---

4. Continuing its analysis, the court came to the same conclusion under a "purposeful availment rubric." *Id.* at ¶ 32.

5. The Pullman Defendants argue *Vig, Wallace* and *Olson* are irrelevant because they are based on long-arm provisions different from Arizona's.

But our long-arm rule allows exercise of personal jurisdiction to the maximum constitutionally permissible extent. Ariz. R. Civ. P. 4.2(a). The courts in those cases concluded exercise of jurisdiction comported with due process, and the Pullman Defendants do not contend otherwise.

hold that jurisdiction may not exist when a client in one state forwards his lawyer's opinion letter to someone in the forum state. The defendant in *Trierweiler v. Croxton and Trench Holding Corp.,* 90 F.3d 1523, 1534 (10th Cir.1996), was an attorney who issued an opinion letter to a client, who passed it on to counsel for a prospective investor in another state. The court rejected the investor's argument that personal jurisdiction was proper because the lawyer knew his client would forward it to an attorney in the forum state. 90 F.3d at 1534. The court held the link between the lawyer and the investor fell "far short of the level of 'continuing relationships and obligations'" that established jurisdiction in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 487, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). 90 F.3d at 1534.

▮▮ ¶ 18 But, contrary to the Pullman Defendants' argument, the authorities do not require that an out-of-state entity must have "continuing relationships and obligations" with the forum state before due process allows the forum to exercise specific personal jurisdiction. While "casual or accidental contacts" with the forum cannot establish jurisdiction, *Planning Group,* 226 Ariz. at 266, ¶ 16, 246 P.3d at 347, due process may be satisfied when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State," *id.* at ¶ 17, quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *See Neal v. Janssen,* 270 F.3d 328, 332 (6th Cir.2001) ("It is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'").

▮ ¶ 19 Although Beverage asserts that the opinion letter by itself was sufficient to establish jurisdiction in Arizona, we look to the "aggregate" of the Pullman Defendants' contacts with Arizona in concluding it is "fair and reasonable to hale them into court here with respect to claims arising out of those contacts." *Planning Group,* 226 Ariz. at 268, ¶ 25, 246 P.3d at 349. The Pullman Defendants argue that a "unilateral act" by a plaintiff who engages with an out-of-state actor is insufficient to create jurisdiction. *See Burger King,* 471 U.S. at 474–76, 105 S.Ct. 2174.

That principle is irrelevant here, however, given that the Pullman Defendants willingly responded to the telephone inquiry from Beverage's agent by agreeing to take Beverage on as a client for purposes of preparing an opinion letter that they knew he would use for tax purposes.

¶ 20 The Pullman Defendants also cite *Nash Finch Co. v. Preston,* 867 F.Supp. 866 (D.Minn.1994). In that case a lawyer represented a business located in the lawyer's state; in the course of that representation he directed an opinion letter to a lender in another state. 867 F.Supp. at 867. As in *Trierweiler,* the court held the other state lacked jurisdiction over the lawyer. *Id.* at 869. The court warned that any other outcome "would mean that anytime a lawyer sent a letter beyond his or her own state's borders, that lawyer would be subject to the jurisdiction of the state of the addressee," which "would make interstate law practice all but impossible" because "[a] law firm could well be susceptible to the jurisdiction of every state in the union." *Id.* at 868–69.

¶ 21 We cannot endorse the broad jurisdictional shield that *Nash Finch* would offer to attorneys. Due process affords lawyers no more protection than other professionals or businesses that engage with clients or others in transactions that cross state lines. We need not decide, however, whether jurisdiction is created when, as in *Nash Finch,* a lawyer addresses an opinion letter to a client's adversary in another state or when, as in *Trierweiler,* a client forwards his lawyer's opinion letter to a third party in another state. The facts here are plainer than those present in *Nash Finch* or *Trierweiler* (in which jurisdiction was denied) or even in *Mirotznick* or *Vig* (in which jurisdiction was upheld). By contrast to those cases, here, the Pullman Defendants entered an attorney-client relationship with an Arizona client, prepared and issued an opinion letter to their Arizona client and accepted payment from within Arizona for services that were used in Arizona.

¶ 22 Our record is clear that Morris repeatedly spoke by phone and sent letters to Arizona to secure Beverage as a client and then to perform the legal service for which

Beverage ultimately retained Pullman. *See Planning Group*, 226 Ariz. at 268–69, ¶ 28, 246 P.3d at 349–50. Moreover, some of Morris's communications sought Arizona-specific information, including background facts about and relevant representations by the Beverages. Lawyers at Pullman used these pieces of Arizona-based information to craft an opinion letter specifically tailored and addressed to Beverage as an Arizona client. Based on the $50,000 fee, the Pullman lawyers' preparation of an opinion letter tailored to Beverage's needs apparently involved significant legal work. Moreover, as the letter was designed to be used by Beverage in preparing his tax return, the Pullman Defendants knew that if the legal opinion proved erroneous, any potential injury necessarily would be felt by Beverage in Arizona.

¶ 23 In sum, although the Pullman Defendants performed all their legal research and drafted the letter in Connecticut, those legal services were directed to Arizona. These contacts, considered in context and in their totality, constitute conduct purposefully targeting Arizona, sufficient to support exercise of jurisdiction. *See id.* at 269, ¶ 29, 246 P.3d at 350.

### C. Nexus Between the Pullman Defendants' Contacts and the Beverages' Claims.

¶ 24 Exercise of jurisdiction also requires a causal nexus between the defendant's forum contacts and the particular claims asserted; in this analysis we consider "the relationship between the defendant, the forum, and the litigation." *Williams*, 199 Ariz. at 4, ¶ 11, 13 P.3d at 283. The Beverages' complaint seeks damages arising out of their failed attempt to use the Chenery transaction to shield income from taxes. Beverage averred that he entered the tax shelter transaction in reliance on his expected receipt of the favorable opinion letter from Pullman and that he relied on the opinion letter in declaring the tax shelter losses on his tax return. The opinion letter, although prepared in Connecticut, was directed to the Arizona-specific representation of an Arizona client. This connection creates a sufficient causal nexus. *Id.* at ¶ 12.

¶ 25 The Pullman Defendants argue that, even though harm to the Beverages in Arizona may have been foreseeable, foreseeability alone is not enough to create the required nexus. *See id.* at 6, ¶ 15, 13 P.3d at 285. But here the alleged injury in Arizona was foreseeable precisely because it arises from the allegedly false opinion letter Pullman created for and directed to Beverage. *See id.* at 4, ¶ 11, 13 P.3d at 283. The Pullman Defendants dispute that Beverage reasonably relied on the forthcoming opinion letter in entering the tax shelter transaction; at this stage in the proceedings, however, we view the facts in the light most favorable to Beverage. *A. Uberti and C. v. Leonardo*, 181 Ariz. 565, 566, 892 P.2d 1354, 1355 (1995).

¶ 26 Because the Beverages' claims arise from the Pullman Defendants' Arizona contacts, the nexus requirement for specific personal jurisdiction is satisfied.

### D. Reasonableness.

¶ 27 Finally, exercise of jurisdiction over the out-of-state defendant must be reasonable. *Planning Group*, 226 Ariz. at 270, ¶ 37, 246 P.3d at 351. Generally, the existence of sufficient contacts between the defendant and the forum state giving rise to the suit will justify exercise of jurisdiction. *Id.* In some instances, however, "the defendant's burden in litigating the case in the forum" or other factors may militate against assertion of jurisdiction. *Van Heeswyk v. Jabiru Aircraft Pty., Ltd.*, 229 Ariz. 412, 420, ¶ 20, 276 P.3d 46, 54 (App.2012). A defendant that has purposefully directed activities toward the forum state "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174.

¶ 28 Beyond a conclusory statement that litigating in Arizona would be burdensome due to "substantial travel and litigation costs," the Pullman Defendants offered no evidence of the burden that such litigation would impose on them. They argue that Connecticut has a greater interest in and connection to the case than Arizona, but "jurisdiction is not a zero-sum game," and the fact that Connecticut may have an interest

does not undermine the Pullman Defendants' contacts with Arizona. *Planning Group*, 226 Ariz. at 268, ¶ 27, 246 P.3d at 349. Exercise of specific personal jurisdiction over the Pullman Defendants is not unreasonable.[6]

## CONCLUSION

¶ 29 For the foregoing reasons, we reverse the superior court's order dismissing the Beverages' claims against the Pullman Defendants and remand to the superior court for further proceedings. As the successful party on appeal, the Beverages are entitled to an award of their costs on appeal pursuant to A.R.S. § 12–341 (West 2013) upon compliance with ARCAP 21.

CONCURRING: MICHAEL J. BROWN, Acting Presiding Judge and LAWRENCE F. WINTHROP, Chief Judge.

---

6. Because the Pullman Defendants are subject to personal jurisdiction in Arizona on the basis of their own contacts with the state, we need not reach the Beverages' alternative argument premised on "conspiracy personal jurisdiction."