IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ROBERT G. HOAG CHARITABLE REMAINDER UNITRUST DATED
MARCH 4, 1994, a charitable remainder unitrust; ROBERT G. HOAG
CHARITABLE REMAINDER UNITRUST II DATED FEBRUARY 1, 1999, a
charitable remainder unitrust; ROBERT G. HOAG CHARITABLE
REMAINDER UNITRUST III DATED JANUARY 10, 2000, a charitable
remainder unitrust; INTERNATIONAL BENEFITS MANAGEMENT
CORPORATION, individually and as Purported Successor Trustee of
ROBERT G. HOAG CHARITABLE REMAINDER UNITRUST DATED
MARCH 4, 1994, ROBERT G. HOAG CHARITABLE REMAINDER
UNITRUST II DATED FEBRUARY 1, 1999, and ROBERT G. HOAG
CHARITABLE REMAINDER UNITRUST III DATED JANUARY 10, 2000,
*Petitioners*

*v.*

THE HONORABLE COLLEEN L. FRENCH, Judge Pro Tem of the
SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County
of Maricopa, *Respondent Judge Pro Tem,*

WELLS FARGO BANK, N.A., *Real Party in Interest*.

No. 1 CA-SA 15-0167
FILED 8-18-2015

---

Petition for Special Action from the Superior Court in Maricopa County
No.  CV2014-003768
The Honorable Colleen L. French, Judge *Pro Tempore*

**REVERSED AND REMANDED**

---

COUNSEL

Gunderson Denton & Proffitt PC, Mesa
By Sterling R. Peterson and Larry A. Dunn
*Counsel for Petitioners*

Jaburg & Wilk PC, Phoenix
By Roger L. Cohen and Kathi M. Sandweiss
*Counsel for Real Party in Interest*

---

**OPINION**

---

Presiding Judge Andrew W. Gould delivered the opinion of the Court, in which Judge Patricia A. Orozco and Judge Peter B. Swann joined.

---

**G O U L D**, Judge:

¶1        Petitioner International Benefits Management Corporation ("IBMC"), individually and as trustee of three Charitable Remainder Unitrusts (the "Unitrusts"), seeks special action relief from the trial court's order denying its motion to dismiss for lack of personal jurisdiction.  For the reasons discussed below, we accept jurisdiction and reverse the trial court's order.

¶2        Robert J. Hoag created three Unitrusts between 1994 and 2000. The Unitrusts were funded by shares of stock belonging to Hoag.  Hoag served as the trustee and administered the Unitrusts in Arizona until 2014.

¶3        In November 2012, Wells Fargo Bank N.A., obtained a $2.5 million default judgment against Hoag personally and against his living trust, the Robert G. Hoag Revocable Living Trust.  In December 2013, Wells Fargo initiated garnishment proceedings to satisfy its judgment.  During the garnishment proceedings, Wells Fargo attempted to subpoena records from several institutions it believed were holding Hoag's assets/distributions from the Unitrusts.

¶4        On February 4, 2014, Hoag resigned as the trustee of the Unitrusts and appointed IBMC, a corporation organized under the laws and operating out of the Bahamas, as successor trustee.  To effect his resignation as trustee, and IBMC's designation and acceptance of trusteeship, Hoag and DeVries met in Florida at that time.  Hoag turned

over all records relating to the Unitrusts, and the parties signed the required documents. Thereafter, IBMC administered the Unitrusts from its office in the Bahamas.

¶5        After transferring trusteeship of the Unitrusts to IMBC in February 2014, Hoag filed a Reply in support of his motion to quash the subpoenas. In support of Hoag's position, Devries, the president of IBMC, sent a declaration to Hoag's counsel in Arizona stating that IBMC would not provide the documents requested by Wells Fargo.[1]

¶6        IBMC currently makes monthly distributions to Hoag in Arizona.[2] Specifically, IBMC pays (1) property taxes and insurance on Hoag's house in Chandler, Arizona, (2) spousal maintenance to Hoag's former spouse, a resident of Arizona, and (3) the remaining balance of the distribution to Hoag.

¶7        On June 20, 2014, Wells Fargo filed its current lawsuit. Wells Fargo alleges that Hoag has fraudulently concealed his assets by transferring them to the Unitrusts. IBMC and the Unitrusts were served on January 30, 2015.

¶8        IBMC moved to dismiss Wells Fargo's complaint for lack of personal jurisdiction. The trial court denied the motion, concluding it had personal jurisdiction over IBMC and the Unitrusts. IBMC now petitions this court for special action relief from the trial court's order.

## DISCUSSION

I.    Special Action Jurisdiction

¶9        We accept special action jurisdiction in this case because IBMC has no "equally plain, speedy, and adequate remedy by appeal." Ariz. R. P. Spec. Act. 1(a). "[A]n appeal inadequately remedies a trial court's improperly requiring a defense in a matter where it has no

---

[1]    IBMC stated it was not required to provide the documents because (1) the assets of the Unitrusts belonged to the trusts, not Hoag, and (2) the spendthrift provisions in the Unitrusts prohibited Wells Fargo from holding the Unitrusts liable for Hoag's debts.

[2]    The Unitrusts provide that IBMC, as trustee, shall pay Hoag, as beneficiary during his lifetime, a set percentage of the "net fair market value" of the assets belonging to each trust. The Unitrusts specify that these amounts shall be paid to Hoag in monthly installments.

jurisdiction." *Polacke v. Superior Court in and for County of Maricopa*, 170 Ariz. 217, 219 (App. 1991). Additionally, because this case involves "clear legal principles and no disputed material facts regarding the jurisdictional issue," special action jurisdiction is appropriate. *Id.* at 219.

II.     Statutory Jurisdiction

¶10     The trial court determined it has personal jurisdiction pursuant to A.R.S. § 14-10202(A). We review issues of statutory interpretation de novo. *Obregon v. Indust. Comm'n of Ariz.*, 217 Ariz. 612, 614, ¶ 9 (App. 2008).

¶11     When interpreting a statute, we must give effect to the drafter's intent; in doing so "we look to the plain language of the statute as the best indicator." *State v. Pledger*, 236 Ariz. 469, 471, ¶ 8 (App. 2015); *see also Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 201, ¶ 3 (App. 2007). "[U]nless the drafters provide special definitions or a special meaning is apparent from the text," we give the words and phrases of the statute their commonly accepted meaning. *Pledger*, 236 Ariz. at 471, ¶ 8. "If the statute is clear and unambiguous, we apply the plain meaning of the statute" without resorting to statutory construction. *Stein*, 214 Ariz. at 201, ¶ 3. (citation omitted).

¶12     A.R.S. § 14-10202(A) states that a trustee submits to the personal jurisdiction of Arizona courts by (1) "accepting the trusteeship of a trust having its principal place of administration in [Arizona]," (2) "by moving the principal place of administration to [Arizona]," or (3) "by declaring that the trust is subject to the jurisdiction of the courts of [Arizona]."

¶13     Wells Fargo argues that based on A.R.S. § 14-10202(A), because the Unitrusts were being administered in Arizona prior to IBMC's appointment, IBMC submitted to the personal jurisdiction of Arizona when it accepted appointment as trustee. Wells Fargo reasons that under the statute, IBMC was required to expressly declare that the trusts were no longer subject to the jurisdiction of Arizona's courts in order to terminate its submission to personal jurisdiction. We disagree.

¶14     The language of A.R.S. § 14-10202(A) provides that personal jurisdiction over a trustee is tied to the principal place where the trust is currently being administered. The statute does not refer to a trust that *had* its principal place of administration in Arizona. The main clause of the statute, "accepting the trusteeship," describes present action. Similarly, the clause "having its principal place of administration," which modifies

4

"trust," also describes present action.[3]  *See* A.R.S. § 14-10108 (stating that a trust may designate any jurisdiction as its "principal place of administration" as long as the "trustee's principal place of business is located in or a trustee is a resident of the designated jurisdiction," or "[a]ll or part of the [trust] administration occurs in the designated jurisdiction.").

¶15            Thus, under the statute, when a trustee accepts an appointment as trustee, if the principal place of administration remains in Arizona, the trustee submits personally to the jurisdiction of Arizona courts.  However, if the principal place of administration is removed to a jurisdiction outside of Arizona, unless the trustee expressly declares the trust will be subject to personal jurisdiction in Arizona, the trustee does not submit to personal jurisdiction in Arizona.  *See Fellows v. Colburn*, 34 A. 3d 552, 563 (N.H. 2011) (interpreting a substantially similar long-arm jurisdiction statute and concluding that personal jurisdiction is "predicated upon a finding that the trust's principal place of administration" is the forum state).

¶16            Accordingly, we conclude that because the Unitrusts are administered by IBMC in the Bahamas, IBMC is not subject to personal jurisdiction in Arizona pursuant to A.R.S. § 14-10202.

III.    Constitutional Jurisdiction

¶17            A.R.S. § 14-10202(c) specifies that there may be other methods of obtaining jurisdiction over a trustee.  Thus, in addition to finding it had statutory jurisdiction, the trial court determined it had jurisdiction in accordance with Rule 4.2(a) of the Arizona Rules of Civil Procedure.  A trial court's ruling on personal jurisdiction is a question of law subject to de novo review.  *Duckstein v. Wolf*, 230 Ariz. 227, 233, ¶ 19 (App. 2012).

¶18            Under Rule 4.2(a), Arizona courts may exercise personal jurisdiction to the maximum extent allowed by the United States Constitution.  "[T]he Due Process Clause of the Fourteenth Amendment limits the exercise of personal jurisdiction by state courts over non-resident

---

[3]       *See* John Eastwood, <u>Oxford Guide to English Grammar</u> § 134 (7th ed. 2002 (discussing participles, and distinguishing between active participles ending in "ing", and past, or passive, participles ending in "ed"; also discussing how a clause with an active participle indicates action at the same time, or present, as the action of the main clause at issue in § 14-10202(A)).

defendants." *Planning Group of Scottsdale, LLC v. Lake Mathews Mineral Props., Ltd.*, 226 Ariz. 262, 266, ¶ 14 (2011) (citing *Pennoyer v. Neff*, 95 U.S. 714, 723-24 (1877)). A state court may exercise personal jurisdiction over a non-resident defendant "only if that defendant has 'sufficient contacts' with the forum state 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Id.* at ¶ 14 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945)). Under the minimum contacts test the question is whether, "[c]onsidering all of the contacts," the "defendants engaged in purposeful conduct for which they could reasonably expect to be haled into that state's courts with respect to that conduct[.]" *Id.* at 268, ¶ 25.

¶19 Personal jurisdiction may be either general or specific. *Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 417, ¶ 8 (App. 2013) (*aff'd as modified*, 234 Ariz. 1 (2014)). General jurisdiction exists when a non-resident defendant's contacts with the forum state are continuous and pervasive. *Int'l Shoe,* 326 U.S. at 318. If general personal jurisdiction exists, then a non-resident defendant may be sued for claims that are entirely separate from its contacts with the forum state. *Id.* Specific jurisdiction exists only for the particular claim asserted and only where the activities in the forum state giving rise to the claim establish the necessary minimum contacts with the state to make the exercise of jurisdiction reasonable and just. *Beverage*, 232 Ariz. at 417, ¶ 8, *aff'd as modified*, 234 Ariz. 1 (2014); *Batton v. Tennessee Farmers Mut. Ins. Co.*, 153 Ariz. 268, 271 (1987) ("When specific jurisdiction is at issue, the minimum-contacts inquiry focuses on the relationship between the defendant, the forum, and the litigation."). "Under either specific or general jurisdiction, 'the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State.'" *Williams v. Lakeview Co.*, 199 Ariz. 1, 3, ¶ 6 (2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

¶20 The parties agree this case involves a question of specific jurisdiction. Thus, for the purposes of personal jurisdiction, IBMC's contacts must result from actions it purposefully directs towards Arizona. *Batton*, 153 Ariz. at 271 (quoting *Burger King,* 471 U.S. at 476 (emphasis in original)) ("Jurisdiction is proper only if "the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State."). "[C]asual or accidental contacts" by IBMC with Arizona, "particularly those not directly related to" Wells Fargo's lawsuit, "cannot sustain the exercise of specific jurisdiction" in Arizona. *Planning Group*, 226 Ariz. at 266, ¶ 16. To determine whether IBMC is subject to the jurisdiction of Arizona, we examine the totality of its jurisdictional contacts. *Id.* at 269, ¶ 29.

**¶21** Viewed in totality, the undisputed jurisdictional facts do not establish sufficient minimum contacts to confer personal jurisdiction over IBMC in Arizona. IBMC did not purposefully direct its actions towards Arizona.

**¶22** The unilateral activities of a plaintiff do not establish the requisite minimum contacts; the connection must arise from "the defendant's 'purposeful' conduct." *Planning Group*, 226 Ariz. at 266, ¶ 16. Thus, in determining whether IBMC purposely availed itself of Arizona as a forum state, we focus on IBMC's conduct as trustee, not Hoag's conduct as grantor/beneficiary or Wells Fargo's as plaintiff. *Hanson v. Denckla*, 357 U.S. 235, 252-53 (1958); *Nastro v. D'Onofrio*, 263 F. Supp. 2d 446, 453 (D. Conn. 2003); *First American Bank of Virginia v. Reilly*, 563 N.E.2d 142, 144 (Ind. Ct. App. 1990).

**¶23** Here, IBMC has no offices or employees in Arizona; does not transact, advertise or solicit business in Arizona; and administers the Unitrusts from its office in the Bahamas. The trust assets are not located in Arizona, and the parties signed the documents transferring trusteeship of the Unitrusts in Florida. At the transfer, Hoag delivered all Unitrust records to IBMC, removing the principal place of administration of the Unitrusts from Arizona.

**¶24** There is no evidence IBMC solicited appointment as trustee or sought to intentionally create a fiduciary or business relationship with Arizona. *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 292 (1st Cir. 1999) (stating that an out of state defendant's agreement to act as trustee of a trust, absent evidence the defendant reached out to create or solicit the relationship with forum state, is insufficient to satisfy purposeful availment requirement). Rather, IBMC simply accepted the appointment as trustee and assumed the existing duties of the trustee under the Unitrusts. Such conduct is not equivalent to actively soliciting business in Arizona, and is an insufficient basis for Arizona to obtain personal jurisdiction over IBMC. *See Rose v. Firstar Bank*, 819 A.2d 1247, 1252, 1254 (R.I. 2003) (stating that in assuming trusteeship of trust where the beneficiaries were located in the forum state, "the trustee has not purposely availed itself of the benefits of doing business in that new jurisdiction; rather, the trustee has simply opted to continue servicing the preexisting trust business that it or its predecessors obtained elsewhere."); *see also Williams v. Lakeview Co.*, 199 Ariz. 1, 5-6, ¶ 14 (2000) (concluding that "a causal nexus between the defendant's solicitation activities and the plaintiff's claims" is a better-reasoned basis for exercising personal jurisdiction).

¶25        IBMC did not, as Wells Fargo contends, intentionally solicit business in Arizona simply because it knew Hoag resided in Arizona.  A trustee's "decision to assume the duties of trustee with knowledge that all beneficiaries" reside in the forum state is not "the legal equivalent for jurisdictional purposes of expanding its business operations" into the forum jurisdiction.  *Rose*, 819 A.2d at 1254-55.  *See Phillips Exeter*, 196 F.3d at 292 (holding that "it is not enough to prove that a defendant agreed to act as the trustee of a trust that benefitted a resident of the forum state. Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship—say, by solicitation,—the mere fact that the defendant willingly" accepted an appointment as a trustee "does not carry the day.")

¶26        Additionally, IBMC did not purposely avail itself of Arizona by periodically communicating with Hoag in Arizona, or by sending trust payments and documents to Arizona.  The trustee's acts in sending trust payments and documents into the jurisdiction where the settlor resides are insufficient as a matter of law to constitute minimum contacts.  *Hanson*, 357 U.S. at 252-53; *see also Rose*, 819 A.2d at 1255 (bank's periodic mailings of trust-account statements and checks to the beneficiaries in forum state, together with any occasional telephone calls that related thereto, did not constitute minimum contacts); *In the Matter of the Estate of Ducey*, 787 P.2d 749, 752 (Mont. 1990) (payment of benefits into forum state as well as routine oral and written contacts relating to payments and trust account statements were insufficient to establish requisite minimum contacts); *Fellows v. Colburn*, 34 A.3d 552, 560-61 (N.H. 2011) (same).

¶27        Wells Fargo also argues that IBMC's act of sending its declaration to Hoag's attorney in support of Hoag's efforts to quash Wells Fargo's subpoenas seeking to garnish the Unitrust income was sufficient to establish the necessary minimum contacts.  Wells Fargo seeks to liken IBMC's declaration to an opinion letter written to advise Hoag, and characterizes such an action as being directed at the forum state.  In support of this argument, Wells Fargo relies on *Beverage v. Pullman*, 232 Ariz. 414. In *Beverage*, an out-of-state law firm issued an opinion letter to an Arizona client and the court determined it had personal jurisdiction over the firm regarding the client's reliance on the letter.

¶28        *Beverage* is distinguishable from this case on multiple grounds.  In *Beverage*, the law firm sent promotional material about the firm to the client's agent in Arizona in order to secure the client's business. *Beverage*, 232 Ariz. at 417, ¶ 11.  The firm communicated with the client in the course of its representation and drafted and issued an opinion letter

knowing the client would rely on the letter. *Id.* Here, there is no evidence that IBMC took any steps to solicit Hoag, or any other Arizona residents, as beneficiaries of the Unitrusts. Additionally, the letter written by IBMC was not an opinion letter, was not written for Hoag's benefit, and was not intended to be relied on by Hoag. Furthermore, in *Beverage*, the contents of the opinion letter were at the heart of the client's claims against the firm; here, the letter written by IBMC is a communication IBMC was required to write in response to Wells Fargo's actions, e.g., Wells Fargo's subpoenas for information concerning the Unitrusts. *See Batton*, 153 Ariz. at 274 ("[T]he requisite minimum contacts are not established when the *plaintiff's action* 'requires the defendant to send communications into th[e] forum.'").

**CONCLUSION**

**¶29** Accordingly, Wells Fargo has not shown evidence of sufficient minimum contacts between IBMC and Arizona in order to justify subjecting IBMC to personal jurisdiction in Arizona. We recognize the trial court may have felt compelled to exercise its jurisdiction due to the nature of the fund transfers.[4] However, where there is no personal jurisdiction, the court has no power to do so. Thus, we accept jurisdiction and grant relief by reversing the trial court's denial of IBMC's motion to dismiss for lack of personal jurisdiction, and remand for further proceedings consistent with this opinion.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama

---

[4] Because it has not been alleged or briefed by the parties, we do not reach the issue of whether personal jurisdiction would exist if IBMC had intentionally assisted Hoag in fraudulently concealing his assets by removing them from Arizona. We note that, depending on the circumstances of a particular case, such conduct may be sufficient to create the minimum contacts required for personal jurisdiction. *Reilly*, 563 N.E.2d at 145; *Johnson v. Witkowski*, 573 N.E. 2d 513, 523-24 (Mass. App. Ct. 1991).