NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

HIGH STAKES COMMUNICATION, LLC, *Plaintiff/Appellee,*

*v.*

STEVEN M. GARVER, et al., *Defendants/Appellants.*

No. 1 CA-CV 23-0792

FILED 09-10-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2022-000138
The Honorable John R. Hannah Jr., Judge

**AFFIRMED**

---

COUNSEL

Limon-Wynn Law PLLC, Tempe
By Monica A. Limon-Wynn
*Counsel for Plaintiff/Appellee*

James M. Mack PLC, Phoenix
By James M. Mack
*Counsel for Defendant/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Jennifer M. Perkins and Vice Chief Judge Randall M. Howe joined.

_____

**C A T L E T T**, Judge:

¶1 Garver Law Offices, P.C. ("Garver Law"), a Virginia law firm, appeals the superior court's final judgment in favor of High Stakes Communication, LLC ("High Stakes"). The superior court concluded Arizona has specific personal jurisdiction over Garver Law, Garver Law is liable to High Stakes for breach of contract, and High Stakes was entitled to the full amount of its attorney fees. Garver Law challenges all three decisions. We agree with the superior court across the board and affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

¶2 High Stakes is an Arizona corporation that assists attorneys in preparing witnesses for depositions and trials. Deborah Johnson ("Johnson") is its principal. Garver Law is a Virginia professional corporation, which operates as a law firm.

¶3 In January 2020, Johnson gave a presentation in Virginia discussing High Stakes' services and providing tips and strategies for dealing with challenging witnesses. Steven Garver ("Garver"), a Virginia attorney who works for Garver Law, attended the presentation. Nine months later, Garver called High Stakes' Arizona phone number, which was included on the presentation materials, and requested assistance with Garver Law's client, who had a deposition scheduled the following month. Johnson agreed to provide witness-preparation services at a rate of $275 per hour and estimated it would take a total of "15-20+" hours to complete the work. High Stakes sent Garver Law an agreement reflecting those terms and requesting a $1,000 retainer. Garver Law signed the agreement and sent a check for the retainer to High Stakes in Arizona.

¶4 Johnson began her work by meeting with Garver Law's client three times a week for two hours at a time. Johnson sent frequent emails to

Garver and his associate, Deb Mayer ("Mayer"), updating them on the work she was doing with the client and the progress being made.

**¶5**        Throughout the year, the deposition was rescheduled multiple times. At one point, Johnson informed Garver that it would not be beneficial for her to continue working with Garver Law's client until closer to the rescheduled deposition date, but Garver requested that Johnson maintain at least weekly contact with the client. Johnson complied, conducting numerous sessions with the client, each lasting between one and two hours, and keeping Garver and Mayer apprised of her work.

**¶6**        In August 2021, High Stakes sent Garver Law a partial invoice reflecting approximately 49 hours of work; Garver Law refused to pay. High Stakes ceased further work.

**¶7**        After Garver Law continued refusing to pay, High Stakes sued it and Garver in Maricopa County to recover the amounts owed under the agreement. Garver Law moved to dismiss the complaint for lack of personal jurisdiction. The superior court held an evidentiary hearing and concluded Arizona has specific personal jurisdiction over Garver Law. High Stakes then moved for summary judgment on the merits, which the court granted as to High Stakes' breach of contract claim against Garver Law. High Stakes voluntarily dismissed its remaining claims and Garver as a defendant. The superior court awarded High Stakes its attorney fees and entered final judgment against Garver Law.

**¶8**        Garver Law timely appealed. We have jurisdiction. *See* A.R.S. §§ 12-2101(A)(1), 12-120.21(A)(1).

## DISCUSSION

### I.    Specific Personal Jurisdiction

**¶9**        Garver Law argues Arizona lacks specific personal jurisdiction over it. In Garver Law's view, it lacked the necessary minimum contacts with Arizona because its conduct was a "direct result" of High Stakes' "unilateral acts." We review *de novo* the superior court's decision on personal jurisdiction. *Ariz. Tile, L.L.C. v. Berger*, 223 Ariz. 491, 493 ¶ 8 (App. 2010).

**¶10**       Arizona courts "exercise personal jurisdiction to the maximum extent allowed by the United States Constitution." *Plan. Grp. of Scottsdale, L.L.C. v. Lake Mathews Min. Props., Ltd.*, 226 Ariz. 262, 265 ¶ 12 (2011) (citing Ariz. R. Civ. P. 4.2(a)). Personal jurisdiction can take one of

two forms: general or specific. *Id.* ¶ 13. High Stakes relies only on specific personal jurisdiction.

**¶11** Specific jurisdiction is limited to a particular claim and only arises when a defendant's activities in the forum state have established "sufficient contacts" "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 266 ¶ 14 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Thus, a court must determine if a defendant's contacts with the forum "make it reasonable . . . to require the [defendant] to defend the particular suit which is brought there." *Id.*

**¶12** "To determine whether [a defendant] is subject to the jurisdiction of Arizona, we examine the totality of its jurisdictional contacts." *Hoag v. French*, 238 Ariz. 118, 123 ¶ 20 (App. 2015). Jurisdiction is proper only when a defendant's actions "create a 'substantial connection' with" Arizona—a plaintiff's unilateral actions cannot create specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 271 (1987). There must also be a "causal nexus between the defendant's forum contacts and the particular claims asserted[.]" *Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 420 ¶ 24 (App. 2013). While entering a contract with a resident of the forum does not automatically create specific jurisdiction, if a defendant "reach[es] out beyond one state and create[s] continuing relationships and obligations with [a] citizen[] of another state," that defendant is "subject to regulation and sanctions in the [forum state] for the consequences of their activities." *Burger King*, 471 U.S. at 473.

**¶13** Garver Law claims it "did not engage in purposeful conduct in, or directed to, Arizona" because High Stakes solicited Garver Law's business in Virginia and there was never any indication that High Stakes is an Arizona corporation. The record demonstrates otherwise.

**¶14** Nine months after Garver attended an event in Virginia where Johnson described High Stakes' services, he contacted High Stakes at its Arizona phone number and requested its services. Garver admitted he called the 602-area code associated with High Stakes' phone number. He also admitted he knew Johnson, High Stakes' principal, was an Arizona resident. The proposed agreement High Stakes sent to Garver Law listed High Stakes' Arizona phone number and an Arizona business address. To finalize the contractual relationship, Garver Law sent the retainer check to High Stakes' Arizona address.

¶15 Garver Law, through Garver and Mayer, and High Stakes, through Johnson, then worked together for almost a year. During that time, Garver and Mayer repeatedly communicated with Johnson over email. Notably, the signature line in Johnson's emails touted her affiliations with Arizona associations, including the Maricopa County Bar Association and the Maricopa County Association of Family Mediators.

¶16 High Stakes did not unilaterally control the length or scope of the business relationship. To the contrary, Garver Law repeatedly reached out to ask for more or different assistance from High Stakes. In May 2021, Garver asked Johnson to speak and work with the client's therapist. And on other occasions, Garver asked Johnson to continue working for the client despite delays in the client's deposition. At one point, Garver told Johnson that he thought "keeping the connection [with the client] at least 1x per week is important . . . maybe even 2x per week."

¶17 While Garver Law learned of High Stakes and its services at a conference in Virginia, High Stakes did nothing more to solicit Garver Law's business. Rather, the parties' contractual relationship was formed only after Garver Law contacted High Stakes and requested its services. Garver Law then entered an agreement with High Stakes, knowing it had an Arizona phone number and address and that its primary contact (Johnson) was an Arizona resident. Garver Law then maintained that relationship with High Stakes for almost a year, during which Garver Law continued to request High Stakes' services. Garver Law, therefore, knowingly created a continuing contractual relationship with an Arizona-based business and established the necessary minimum contacts for Arizona to exercise personal jurisdiction. *See Burger King*, 471 U.S. at 473.

¶18 There also was a causal nexus between the claims High Stakes asserted and Garver Law's actions, and it was reasonable for Arizona to exercise personal jurisdiction. *See Beverage*, 232 Ariz. at 420 ¶ 24. High Stakes' claims sought to recover amounts owed for services High Stakes performed under a contract Garver Law requested, approved, and benefitted from. And there was no evidence that requiring Garver Law to defend High Stakes' claims in Arizona would be burdensome. *See id.* ¶ 27. The superior court did not err by exercising specific personal jurisdiction over High States' claims against Garver Law. *See id.*

## II. Summary Judgment

¶19 Next, Garver Law argues the superior court erred in granting High Stakes' summary judgment motion because, while Garver law

acknowledges the facts are undisputed, it contends there was a dispute about whether High Stakes' conduct was reasonable. We review the superior court's grant of summary judgment *de novo*, affirming if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Ariz. R. Civ. P. 56(a); *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71 ¶ 11 (App. 2011). We view the record in the light most favorable to Garver Law, the non-moving party. *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373 ¶ 13 (2021).

¶20        Garver Law claims it was unreasonable for High Stakes to exceed the "15-20+" hour estimate included in the contract without expressly informing Garver Law it was doing so. High Stakes contends its actions were reasonable because the contract stated the "15-20+" hours was only an estimate. And High Stakes contends Garver Law was aware of the work High Stakes was doing and consistently requested additional services. We agree with High Stakes.

¶21        We start with the language in the contract. As High Stakes points out, that language did not list a maximum number of hours High Stakes could or would spend on the engagement. The contract instead reflected only that High Stakes *estimated* that 15-20 hours would be required and that Garver Law would charge $275 per hour worked. But High Stakes expressly indicated—by using the "+" sign next to the estimate—that the hours could exceed the estimate, and Garver Law agreed. The contract also did not require High Stakes to inform Garver Law how many hours had been expended at any point or require High Stakes to obtain approval before exceeding a certain number of hours. The contract also did not require High Stakes to provide an invoice to Garver Law on a periodic basis. Rather, it stated only that "[f]inal payment is due within 10 days of receipt of invoice."

¶22        Garver Law does not cite authority supporting its argument that High Stakes cannot recover under its breach of contract claim if the hours charged were unreasonable. High Stakes was, however, required to act in good faith in carrying out the contract with Garver Law. If, for example, High Stakes exercised discretion under the contract to bill hours in such a manner as to deprive Garver Law of "a reasonably expected benefit of the bargain," Garver Law might be excused from performance, at least in part. *See Southwest Sav. & Loan Assoc. v. SunAmp Sys., Inc.*, 172 Ariz. 553, 558 (App. 1992). "The question is whether the jury might reasonably have found that [High Stakes] wrongfully exercised" its power to bill on a per-hour basis "for a reason beyond the risks" that Garver Law assumed in

its agreement with High Stakes, "or for a reason inconsistent with [Garver Law's] 'justified expectations.'" *Id.* at 559. (citations omitted).

**¶23**     Garver Law did not establish that a jury could reasonably find that High Stakes wrongfully exercised its discretion under the contract to work the number of hours needed to prepare Garver Law's client for her deposition.  Garver Law has never disputed that it requested all services High Stakes provided or that High Stakes contemporaneously informed it what those services were.  Those services included numerous sessions, over a period of months, between Johnson and the client or her therapist, many of which Garver Law requested.  As Garver Law requested more and more services, and the length of the contractual relationship extended, Garver never requested an interim invoice or an update as to the number of hours expended.  Thus, Garver Law knew about, and assumed, the risk that High Stakes had performed more than 15-20 hours to prepare its client for her deposition, and that it would eventually have to pay for those services.  And no jury could reasonably conclude that requiring Garver Law to pay $275 per hour for the time expended to prepare its client is inconsistent with Garver Law's justified expectations under the contract.  The superior court did not err in granting summary judgment in favor of High Stakes on its breach of contract claim.

## III.    Attorney Fees

**¶24**     Finally, Garver Law argues that the superior court abused its discretion by failing to reduce High Stakes' attorney fees award because High Stakes did not succeed on all of its claims, including its claims against Garver personally.  We will not reverse an attorney fee award absent an abuse of discretion. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265 ¶ 18 (App. 2004).  The superior court awarded High Stakes its attorney fees under A.R.S. § 12-341.01, which permits an award to the prevailing party in an action arising out of contract.  When awarding fees under A.R.S. § 12-341.01, the superior court "*may* consider the portion of fees that contributed to the prevailing party's success." *Henry v. Cook*, 189 Ariz. 42, 44 (App. 1996) (emphasis added).

**¶25**     High Stakes voluntarily dismissed its non-contract claims against Garver Law and its claims against Garver after obtaining summary judgment on its contract claim against Garver Law.  To the extent that voluntary dismissal means High Stakes did not prevail against Garver (which we do not decide), Garver Law did not identify for the superior court (or us) any fees that High Stakes incurred solely in connection with its non-contract claims or its claim against Garver.  In other words, Garver

Law did not establish that High Stakes' attorneys spent additional time above that required to succeed on High Stakes' contract claim against Garver Law. The superior court did not abuse its discretion in awarding High Stakes the full amount of attorney fees requested.

**¶26** Finally, Garver Law argues that High Stakes failed to disclose the terms of its fee agreement with its attorney as required by Arizona Rule of Civil Procedure 54(g)(4). This is inaccurate. In an affidavit in support of its application for attorney fees, one of High Stakes' attorneys disclosed that "[t]he Firm billed High Stakes . . . on an hourly basis" and disclosed the hourly rate of each attorney and paralegal who worked on this matter.

### ATTORNEY FEES

**¶27** Both parties request their attorney fees on appeal under A.R.S. § 12-341.01. As the prevailing party on appeal, we award High Stakes its reasonable attorney fees and costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. Because Garver Law is not the prevailing party on appeal, we deny its request for attorney fees.

### CONCLUSION

**¶28** We affirm the superior court's judgment.

