IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WAL-MART STORES, INC., *Petitioner*,

*v.*

THE HONORABLE KERSTIN LEMAIRE, Judge of the SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County of MARICOPA, *Respondent Judge*,

KATHI BUSS, *Real Party in Interest*.

No. 1 CA-SA 17-0003
FILED 5-11-2017

Petition for Special Action from the Superior Court in Maricopa County
No. CV2016-003627
The Honorable Kerstin G. LeMaire, Judge

**JURISDICTION ACCEPTED, RELIEF GRANTED**

COUNSEL

Lewis Roca Rothgerber Christie, LLP, Phoenix
By Craig W. Phillips, Lawrence A. Kasten, Jennifer Lee-Cota
*Counsel for Petitioner*

The Keating Law Firm, PLC, Scottsdale
By Kevin R. Keating
*Counsel for Real Party in Interest*

---

## OPINION

Presiding Judge Peter B. Swann delivered the opinion of the court, in which Judge Kent E. Cattani and Judge Donn Kessler joined.

---

**S W A N N**, Judge:

**¶1** Kathi Buss sued Wal-Mart Stores, Inc., a company incorporated in Delaware with its principal place of business in Arkansas, in Arizona over a slip-and-fall accident that occurred at a store in Oregon. Wal-Mart filed a motion to dismiss for lack of jurisdiction, and the superior court, relying on our opinion in *Bohreer v. Erie Insurance Exchange*, 216 Ariz. 208 (App. 2007), denied it, finding Wal-Mart was subject to general jurisdiction in Arizona. Wal-Mart then filed a petition for special action.[1]

**¶2** Because the facts of the case have no connection to Arizona, Wal-Mart can be sued here only if the Arizona courts have general jurisdiction over it. Buss maintains that Wal-Mart's pervasive presence and substantial business activities in Arizona are sufficient to create general jurisdiction, and *any* claim against Wal-Mart is therefore cognizable in Arizona. We disagree. In keeping with *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011), and *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), we hold that the magnitude of a corporation's business activities in Arizona is not sufficient to create general jurisdiction when that corporation is neither incorporated nor has its principal place of business in Arizona. We further hold that foreign corporations do not impliedly consent to general jurisdiction in Arizona merely by registering as foreign corporations and appointing agents for service of process under A.R.S. §§ 10-1501 to -1510. Wal-Mart therefore is subject only to specific jurisdiction

---

[1] The superior court did not hold an evidentiary hearing on Wal-Mart's motion to dismiss, and we therefore review the superior court's ruling de novo, "viewing the facts in the light most favorable to the plaintiff[ ] but accepting as true the uncontradicted facts put forward by the defendant[ ]." *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 226 Ariz. 262, 264 n.1, ¶ 2 (2011). Neither the petition nor the response include the exhibits from the motions filed in the superior court. We therefore take judicial notice of the superior court record. *See In re Sabino R.*, 198 Ariz. 424, 425, ¶ 4 (App. 2000).

in Arizona, and actions against it in the Arizona courts must relate to its activities in the state.

## JURISDICTION

**¶3** Special action jurisdiction is discretionary, "reserved for 'extraordinary circumstances' and is not available 'where there is an equally plain, speedy, and adequate remedy by appeal.'" *Stapert v. Ariz. Bd. of Psychologist Exam'rs*, 210 Ariz. 177, 182, ¶ 21 (App. 2005) (citations omitted). We accept jurisdiction when, as here, "the motion [to dismiss] reveals an absence of jurisdiction, as an appeal inadequately remedies a trial court's improperly requiring a defense in a matter where it has no jurisdiction." *Sigmund v. Rea*, 226 Ariz. 373, 375, ¶ 5 (App. 2011) (citation and internal quotation marks omitted).

## DISCUSSION

**¶4** States may exercise two forms of personal jurisdiction. First, specific jurisdiction exists when the defendant establishes minimum contacts with the forum state by purposefully directing its activities to that state, and the litigation arises out of those activities. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Second, general jurisdiction allows a forum state to hear any claim against the defendant, even when the facts giving rise to it have no connection to the forum. *Goodyear*, 564 U.S. at 919. General jurisdiction exists over a corporation in several circumstances. For example, a corporation is subject to general jurisdiction in the state in which it is incorporated, the state in which it has its principal place of business, *id.* at 924, a state in which it has consented to general jurisdiction, *see id.* at 928, a state in which its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State," *id.* at 919 (citation omitted), and in other states in "exceptional cases" where circumstances make general jurisdiction appropriate, *see Daimler*, 134 S. Ct. at 761 n.19.

**¶5** Because this case arises entirely out of Wal-Mart's activities in Oregon, Arizona courts lack specific jurisdiction. The sole issue in this special action is the extent to which Arizona may exercise general jurisdiction over foreign corporations. Buss suggests two theories to support general jurisdiction over Wal-Mart in Arizona: (1) by appointing an agent for service of process, it has consented to general jurisdiction, and (2) the sheer magnitude of Wal-Mart's presence in Arizona relative to other corporations means that Wal-Mart is "at home" here. We address each argument in turn.

I.     WAL-MART DID NOT CONSENT TO GENERAL JURISDICTION
       IN ARIZONA.

¶6          The superior court concluded under *Bohreer* that Wal-Mart
impliedly consented to general jurisdiction in Arizona by registering and
appointing an agent to receive process here.  *Bohreer* held that Arizona
courts may exercise general jurisdiction over a foreign insurer because the
insurance statutes provide "for an irrevocable appointment of the director
of insurance for service of process which remains in effect 'as long as there
is in force in this state any contract made by the insurer or obligations
arising therefrom.'" 216 Ariz. at 211, ¶¶ 10–11 (quoting A.R.S. § 20-221(A)).
The *Bohreer* court interpreted § 20-221 as creating express (not implied)
consent to general personal jurisdiction.

¶7          Wal-Mart argues that *Bohreer* was impliedly overruled by the
United States Supreme Court's recent opinions in *Goodyear Dunlop Tires
Operations* and *Daimler AG*.  Those cases do not address general jurisdiction
by express consent, and we need not decide the continuing vitality of
*Bohreer*, because Wal-Mart is not registered under § 20-221.

¶8          No Arizona case has decided whether foreign corporations
consent to general jurisdiction by registering pursuant to A.R.S. §§ 10-1501
to -1510.  Those statutes provide that foreign corporations authorized to
conduct business in Arizona are "subject to the same duties, restrictions,
penalties and liabilities now or later imposed on a domestic corporation of
like character."  A.R.S. § 10-1505(B).  And foreign corporations must
maintain in Arizona a known place of business and a statutory agent for
service of process.  A.R.S. § 10-1507.

¶9          We hold that these provisions do not create general personal
jurisdiction over foreign corporations, either by prescription or consent.
First, corporations do not expressly consent to general jurisdiction by
registering.  The equal treatment of foreign and domestic corporations
prescribed by § 10-1505(B) refers to substantive liabilities and duties
without any mention of general jurisdiction.  Had the Legislature intended
to endow Arizona courts with the ability to hear all cases (including those
in which Arizona has no interest) against all registered foreign
corporations, it would have said so.  We think it is unlikely that the
Legislature intended to give Arizona courts the constitutionally dubious
authority to hear any case against any registered foreign corporation when

such cases need not involve any Arizonans.[2]  Buss argues that it would be "manifestly unfair to Arizonans" to hold that we lack general jurisdiction over Wal-Mart such that Arizona residents cannot sue for causes of action that arise in other states.  But, it is settled law that the specific-jurisdiction analysis focuses exclusively on "the relationship among the defendant, the forum, and the litigation," *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014) (citation omitted), and the convenience to the *plaintiff* has no bearing on whether a *defendant's* due process rights are violated by subjecting it to general jurisdiction.

¶10            Second, we conclude that the statutes do not create general jurisdiction by implied consent.  A corporation cannot fairly be deemed to have consented to waive its due process rights when, as here, the statutes give no notice that such a waiver is the price of registration.

¶11            We acknowledge that some recent decisions still hold that consent to service of process is consent to general personal jurisdiction.  *See, e.g.*, *Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 439–40 (D.N.J. 2015); *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 467 (D.N.J. 2015).  The *Senju* and *Otsuka* courts reasoned that because the Supreme Court has not expressly overruled its implied-consent jurisprudence, corporate defendants consent to jurisdiction by consenting to service of process in the forum state.  *Senju*, 96 F. Supp. 3d at 436–40; *Otsuka*, 106 F. Supp. 3d at 467. We are not persuaded by those decisions.

¶12            The concept of consent implied from registration statutes originated in response to *Pennoyer v. Neff*, 95 U.S. 714 (1877), in which the Supreme Court held that state courts' jurisdiction was based on physical presence in the forum.  Implied consent allowed state courts to assert jurisdiction over companies that at the time were considered "present" only within their respective states of incorporation.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 631–32 (2d Cir. 2016) (citing *Bank of Augusta v. Earle*, 38 U.S. 519 (1839)).  Thus, registration statutes "secure[d] local jurisdiction in respect [to] business transacted within the State."  *Robert Mitchell Furniture*

---

[2]            Some states do assert general jurisdiction in this manner.  For example, under Pennsylvania law, it "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction" if a corporation "carr[ies] on [ ] a continuous and systemic part of its general business within this Commonwealth." 42 Pa.C.S.A. § 5301(a)(2)(iii).  We need not opine on the constitutionality of such a scheme to observe that it evinces a legislative purpose different from that apparent from the text of Arizona's statutes.

*Co. v. Selden Breck Constr. Co.*, 257 U.S. 213, 215 (1921). The Supreme Court's personal "jurisdiction by consent" cases, such as *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), and *Louisville & N.R. Co. v. Chatters*, 279 U.S. 320, 328 (1929), were decided before *International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310 (1945), which held that states could exercise jurisdiction over a corporation that had "minimum contacts" with the forum. This in turn led to the doctrine of specific jurisdiction, which allowed states to assert jurisdiction over cases arising from business activities conducted by foreign corporations in or affecting them while preventing unfair assertion of jurisdiction against those who had not voluntarily established contact with the forum. *See, e.g.*, *Burger King Corp.*, 471 U.S. 462. Today, specific jurisdiction accomplishes the same goal as jurisdiction by implied consent, but rather than focusing on a corporation's "presence" in a forum state, specific jurisdiction is based on the relationship between the forum, the defendant, and the facts giving rise to the cause of action. *See Walden*, 134 S. Ct. at 1126.

**¶13**   Because the modern doctrine of specific jurisdiction amply ensures that a state has jurisdiction when a corporation's conduct allegedly causes harm in that state, there is no need to base personal jurisdiction solely upon a murky implication of consent to suit — for all purposes and in all cases — from the bare appointment of an agent for service. We therefore agree with those decisions holding that registration statutes do not imply consent to general jurisdiction. *E.g., Brown*, 814 F.3d at 630–41; *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 175–79 (D.N.J. 2016); *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 51–52 (Mo. 2017). To be sure, registration and appointment may form the basis for a finding that a corporation has established minimum contacts with the forum state. But minimum contacts are not enough to create jurisdiction over cases having no substantive connection to the forum. As the Supreme Court observed in *Daimler*, cases "decided in the era dominated by *Pennoyer*'s territorial thinking . . . should not attract heavy reliance today." 134 S. Ct. at 761 n.18.

II.   WAL-MART IS NOT "AT HOME" IN ARIZONA.

**¶14**   A state has general jurisdiction over a foreign corporation when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. But general jurisdiction requires more than continuous and systematic activity. *Id.* at 927–28; *see also Daimler*, 134 S. Ct. at 761 n.19 (general jurisdiction outside the state of incorporation or forum state may be permissible in an "exceptional case"). Wal-Mart argues that

after *Daimler* and *Goodyear*, foreign corporations are subject to general jurisdiction *only* in their respective principal places of business and states of incorporation. We need not endorse Wal-Mart's broad reading of those cases to conclude that they do not support the exercise of general jurisdiction in Arizona on this record.

¶15        In *Goodyear*, the Supreme Court held that North Carolinians could not sue Goodyear's foreign subsidiaries in a United States court for a tire design defect that allegedly caused an accident in France. 564 U.S. at 920–21, 929. The Court reasoned that placement of tires into the stream of commerce, some of which may end up in the forum, is not enough to confer general jurisdiction in that forum. *Id.* at 926–29.

¶16        In *Daimler*, Argentinian residents sued Daimler, a German company, in federal court in California over its Argentinian subsidiary's alleged collaboration with Argentinian security forces in the perpetration of human rights abuses in the 1970s and 1980s in Argentina. 134 S. Ct. at 750–51. The plaintiffs claimed that Daimler was subject to general jurisdiction in California based on the contacts of its subsidiary, Mercedes. *Id.* at 751. The Court reasoned that "[i]t was . . . error . . . to conclude that Daimler, even with [Mercedes] contacts attributed to it, was at home in California, and hence subject to suit there on claims by foreign plaintiffs having nothing to do with anything that occurred or had its principal impact in California." *Id.* at 762.

¶17        *Daimler* did not categorically reject the possibility that a state may exercise general jurisdiction over a corporation for other reasons:

> We do not foreclose the possibility that in an exceptional case [such as *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)] a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.
>
> . . . .
>
> [But] the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts. . . . *General jurisdiction calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.* A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, "at home" would be synonymous with "doing

business" tests framed before specific jurisdiction evolved in the United States.

*Id.* at 761 n.19, 762 n.20 (internal quotation, modification, and citation omitted) (emphasis added).

**¶18**　　　　Federal circuit courts have interpreted *Daimler* to mean that states other than a corporation's state of incorporation and principal place of business may exercise general jurisdiction over that corporation only in exceptional cases. *Brown*, 814 F.3d at 627 ("[I]n our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business — the 'paradigm' cases."); *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (noting that general jurisdiction is appropriate "only in 'exceptional' cases"); *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 698 (7th Cir. 2015) (holding any state other than the states of incorporation and principal place of business can assert general jurisdiction only by adhering to the "stringent criteria" of *Daimler* and *Goodyear*); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business"); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("Only in an 'exceptional case' will general jurisdiction be available anywhere else."); *In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 39 (2d Cir. 2014) ("*Daimler AG*, however, reaffirmed that, under *Goodyear*, general jurisdiction might, 'in an exceptional case,' extend beyond a corporation's state of incorporation and principal place of business . . . .").

**¶19**　　　　The Supreme Court has acknowledged only one exceptional case that would give rise to general jurisdiction over a foreign corporation. *Daimler*, 134 S. Ct. 746 at 761 n.19, 762 n.20 (citing *Perkins,* 342 U.S. 437).  In *Perkins*, the Supreme Court held that general jurisdiction was proper in Ohio when the defendant company's mining operation in the Philippines was shut down by the Japanese occupation, and the general manager, who was also the principal stockholder, relocated to and ran the company's "necessarily limited wartime activities" in Ohio.  342 U.S. at 447–48.

**¶20**　　　　Buss argues that Wal-Mart is subject to general jurisdiction based on its exceptionally substantial business activities in Arizona.  As of January 2017, in Arizona Wal-Mart operates 127 retail locations and 4 distribution centers, employs 33,910 people, spent $1.5 billion with suppliers, collected $270.3 million in state sales taxes, and paid $91.5 million in state taxes.  Wal-Mart was the largest employer in Arizona in 2014 and

the second-largest in 2015. In 2015, it employed more Arizonans than the next two largest employers combined. But while Wal-Mart has a large economic presence in the state, there is nothing "exceptional" about its activities to give rise to general jurisdiction.

¶21　　　Were we to hold that Arizona, a state that is home to just under 34,000 of Wal-Mart's estimated 2.3 million global employees (1.5 million of whom are employed in the United States) has general jurisdiction over Wal-Mart, we would effectively confer general jurisdiction over every foreign corporation with a large commercial presence in Arizona. Such a rule would be neither fair, rational nor consistent with the reasoning of *Daimler* and *Goodyear*. Neither the facts of this case nor the nature of Wal-Mart's activities in Arizona give rise to the "exceptional case" envisioned by the Supreme Court — exigent circumstances that render traditional jurisdictional limits unworkable.

¶22　　　Moreover, a size-based approach would be both standardless and malleable. There is no constitutional doctrine establishing a threshold level of commercial activity sufficient to create general jurisdiction. And if mere size were sufficient, the fluctuating levels of each foreign corporation's economic activity would have to be relitigated in every case before jurisdiction could be determined. We view such an approach as constitutionally untenable.

¶23　　　Buss argues that Wal-Mart's presence here is more like *Perkins* by arguing it is a party to many suits in Arizona and is thus not prejudiced by having to defend this action in Arizona, and she notes that the former chairman of Wal-Mart's board of directors resides in Arizona. We disagree. First, Wal-Mart's contacts with the state are easily sufficient to subject it to specific jurisdiction in cases involving its activities in, or directed to, Arizona. The fact that such cases arise does not create jurisdiction over cases that have no connection to this state — as the Supreme Court noted, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20.

¶24　　　Buss finally attempts to distinguish the defendants in *Daimler* and *Goodyear* from Wal-Mart by arguing that the Supreme Court distinguished between foreign corporations (i.e., corporations incorporated in other states) and alien corporations (i.e., corporations incorporated in other countries). She relies on the undecided assumptions in *Daimler* and *Goodyear* that the domestic entities were subject to general jurisdiction in the forums. *Daimler*, 134 S. Ct. at 758; *Goodyear*, 564 U.S. at 918. But due process applies to all defendants, and personal jurisdiction jurisprudence

makes no such distinction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) (applying the Due Process Clause's minimum-contacts analysis to a Colombian corporation sued in Texas); *cf. Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that the Fifth and Fourteenth Amendments protect aliens from "deprivation of life, liberty, or property without due process of law").

**¶25** In sum, subjecting Wal-Mart to general jurisdiction in Arizona based on the level of its commercial activity would wrongly conflate general jurisdiction with specific jurisdiction and provide an unworkable standard that would require extensive factual findings in every case. Even without general jurisdiction in Arizona, Buss has a forum readily available to seek redress for her injuries — Oregon.

## CONCLUSION

**¶26** For the foregoing reasons, we accept jurisdiction and grant relief. We direct the superior court to dismiss the action without prejudice for lack of personal jurisdiction.



AMY M. WOOD • Clerk of the Court
FILED: AA