NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SCOTT ALAN MALCOMSON, *Plaintiff/Appellant*,

*v.*

IMVU, INC., *Defendant/Appellee*.

No. 1 CA-CV 18-0596
FILED 5-30-2019

Appeal from the Superior Court in Maricopa County
No. CV2018-092198
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Scott Alan Malcomson, Mesa
*Plaintiff/Appellant*

Dickinson Wright PLLC, Phoenix
By Andrew J. Alvarado, J. Gregory Cahill
*Counsel for Defendant/Appellee*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which
Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

**C R U Z**, Judge:

¶1        Scott Alan Malcomson appeals from the superior court's order dismissing his case for lack of personal jurisdiction.  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Malcomson brought a complaint against IMVU, Inc. alleging claims for defamation, breach of contract, and breach of the duty of good faith and fair dealing.  Malcomson alleged that the website FurAffinity is a division of IMVU, headquartered in California.  Malcomson also alleged that FurAffinity violated its terms of service and code of conduct, engaged in defamatory statements against him, and permanently terminated his account.

¶3        IMVU moved to dismiss alleging that the superior court lacked personal jurisdiction, among other issues.  IMVU contended that all of the traditional bases of personal jurisdiction did not exist.  IMVU attached an affidavit from its president, Kevin Henshaw, declaring that IMVU is a Delaware corporation with its headquarters in California and that it does not (1) own or lease any property in Arizona; (2) pay taxes in Arizona; nor (3) have an office, employees, equipment, operations, bank accounts, telephone numbers, or fax numbers in Arizona.

¶4        After oral argument, the superior court found it lacked jurisdiction and granted IMVU's motion.  Malcomson appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

¶5        The sole issue on appeal is whether the superior court had personal jurisdiction over IMVU, which we review *de novo*.  *Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 417, ¶ 10 (App. 2013), *aff'd as modified*, 234 Ariz. 1 (2014).

¶6        Arizona law permits "long-arm" exercise of personal jurisdiction to the greatest extent allowable under the United States Constitution.  Ariz. R. Civ. P. 4.2(a); *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 226 Ariz. 262, 265, ¶ 12 (2011).  Personal jurisdiction may be either general or specific.  *Id.* at 265, ¶ 13.  A state may exercise general jurisdiction over non-residents whose activities in the state are exceptionally systematic and continuous, or specific jurisdiction "over a defendant who has sufficient contacts with the state to make the exercise

of jurisdiction 'reasonable and just' with respect to that claim." *Beverage*, 232 Ariz. at 417, ¶ 8; *Wal-Mart Stores, Inc. v. LeMaire*, 242 Ariz. 357, 361, ¶ 14 (App. 2017). Malcomson had the burden to show that Arizona could exercise personal jurisdiction over IMVU. *See, e.g.*, *Maloof v. Raper Sales, Inc.*, 113 Ariz. 485, 487 (1976); *Arizona Tile, L.L.C. v. Berger*, 223 Ariz. 491, 493, ¶ 8 (App. 2010).

I.      General Jurisdiction

**¶7**            In his complaint, Malcomson alleged that IMVU "does business in Maricopa County" and that "[t]he events, actions, or debts subject of this Complaint occurred in Maricopa County." IMVU disputed Malcomson's jurisdictional allegations and provided evidence that it does not have substantial or continuous contacts with Arizona. Because IMVU challenged personal jurisdiction, Malcomson "cannot merely rest on the bare allegations in his complaint; he must present facts, by affidavit or otherwise, supporting personal jurisdiction." *Armstrong v. Aramco Servs. Co.*, 155 Ariz. 345, 348 (App. 1987).

**¶8**            In response to IMVU's motion to dismiss, Malcomson argued that IMVU's contacts with Arizona are "substantial, continuous and systematic" because FurAffinity profited financially from advertisements placed near works of art uploaded to the website by artists.

**¶9**            A state has general jurisdiction over a foreign corporation when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Wal-Mart*, 242 Ariz. at 361, ¶ 14. But general jurisdiction requires more than continuous and systematic activity. *Id.* *See also Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014) (general jurisdiction outside the state of incorporation or forum state may be permissible in an "exceptional case").

**¶10**          In *Wal-Mart*, we held that Wal-Mart, who at the time operated 127 retail locations, 4 distribution centers, employed 33,910 people, spent $1.5 billion with suppliers, collected $270.3 million in state sales taxes, and paid $91.5 million in state taxes, was not subject to general personal jurisdiction in Arizona because there is nothing "exceptional" about its activities that would give rise to general jurisdiction. 242 Ariz. at 362-63, ¶¶ 20, 26.

**¶11**          The allegation of general jurisdiction here is more tenuous than in *Wal-Mart*. Unlike *Wal-Mart*, IMVU does not have retail locations, distribution centers, or pay taxes in Arizona. There is nothing "exceptional" about IMVU's website that subjects it to general personal

jurisdiction in Arizona. *Id.* Arizona does not have general jurisdiction over IMVU.

## II. Specific Jurisdiction

**¶12** We next analyze whether Arizona may exercise specific personal jurisdiction over IMVU. A foreign corporation is subject to personal jurisdiction in Arizona if: (1) it purposefully availed itself of the privilege of conducting business in Arizona; (2) the claim asserted "arises out of or relates to" IMVU's contact with Arizona; and (3) "the exercise of jurisdiction is reasonable." *Williams v. Lakeview Co.*, 199 Ariz. 1, 3, ¶ 7 (2000).

**¶13** We first examine whether IMVU has purposefully availed itself to jurisdiction in Arizona. This requirement ensures that IMVU will not be haled into Arizona "as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The requisite contacts cannot "be established through the unilateral activities of the plaintiff; they must instead arise from the defendant's 'purposeful' conduct." *Planning Grp.*, 226 Ariz. at 266, ¶ 16 (citations omitted); *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 272 (1987) ("[S]tate jurisdiction over foreign defendants is impermissible unless the defendant, not the plaintiff, has purposefully directed its activities at the forum state.").

**¶14** In *Smith & Wesson*, the plaintiff alleged that the defendant was a California corporation with its principal place of business in California and that "[t]hrough its website, [defendant] conducts business throughout the United States, including in Arizona." *Smith & Wesson Corp. v. The Wuster*, 243 Ariz. 355, 360, ¶ 20 (App. 2017). We held there was no personal jurisdiction because, "accepting as true the allegation regarding [defendant's] website does not evidence purposeful conduct directed at Arizona." *Id.* (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 415 (9th Cir. 1997)) (holding personal jurisdiction over non-resident defendant was improper when defendant "[had] no contacts with Arizona other than maintaining a home page that [was] accessible to Arizonans, and everyone else, over the Internet").[1]

---

[1] In his opening brief, Malcomson alleges that the court, relying on *Cybersell*, classified FurAffinity as a "passive website." After review of the transcript and the orders, the superior court never classified the website as either "passive" or "interactive." In fact, after IMVU noted *Cybersell's*

¶15     However, in *Planning Grp.,* we determined that sending a copy of a due diligence report, along with a series of directed telephone calls, e-mails, faxes, and letters to an Arizona plaintiff was sufficient to establish purposeful contacts for jurisdictional purposes. 226 Ariz. at 268-69, ¶¶ 26, 31.

¶16     Here Malcomson did not allege, and there is no evidence that, IMVU directed any reports, telephone calls, e-mails, faxes, or letters towards him in Arizona.[2] In fact, at oral argument, Malcomson admitted that IMVU did not "specifically target Arizona, they simply do this as a service for all persons who use the website and engage with them in their terms of service as parties to those terms of service." Malcomson confirmed that IMVU was not singling out their contacts in Arizona "in any way different than they would anyone in any other state."

¶17     Relying on *Smith & Wesson* and *Cybersell*, the superior court properly concluded it lacked personal jurisdiction. We agree. IMVU did not purposefully avail itself to Arizona jurisdiction simply by operating a website that Arizonans could access, especially when Arizonans were not using the website disproportionally and were not singled out for solicitation. *Smith & Wesson*, 243 Ariz. at 359-60, ¶¶ 19-22.

**CONCLUSION**

¶18     For the foregoing reasons, we affirm the superior court's dismissal of Malcomson's complaint for lack of jurisdiction.



AMY M. WOOD • Clerk of the Court
FILED: AA

analysis distinguishing passive from interactive websites, the court noted that it was concerned with whether the website disproportionally reached into Arizona.

[2]     IMVU did respond to an e-mail sent by Malcomson with the subject heading of "LEGAL NOTICE: CEASE & DESIST (Breaches of Covenant in Support of Terrorist Activities)" alleging that FurAffinity violated its Terms of Service and Code of Conduct.