NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOHN DANKO III, *Plaintiff/Appellant,*

*v.*

ASHLEY ELIZABETH AMEIKA, *Defendant/Appellee.*

No. 1 CA-CV 24-0045

FILED 09-03-2024

Appeal from the Superior Court in Maricopa County
No. CV2023-092344
The Honorable Adam D. Driggs, Judge

**AFFIRMED**

COUNSEL

John Danko III, Mesa
*Plaintiff/Appellant*

Broening Oberg Woods & Wilson, P.C., Phoenix
By Kelley M. Jancaitis, Donald Wilson, Jr., Danielle N. Chronister
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

¶1        John Danko III ("Danko") appeals from the superior court's dismissal of his civil complaint against Ashley Elizabeth Ameika ("Ameika"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In May 2023, Danko sued Ameika, his former attorney, alleging that he "hired [her] to enforce" orders of protection that he had obtained against his "ex-spouse and ex-mother-in-law" and that she "never enforced" the orders. According to Danko, Ameika made "absolutely no efforts to enforce [the] protective orders" and then "refused to refund" his retainer. Along with claims for breach of contract and professional negligence, Danko asserted a variety of other claims, including defamation, slander, libel, fraud, and negligent infliction of emotional distress.

¶3        Ameika moved to dismiss under Arizona Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction. Noting that she lives and works in South Carolina, Ameika argued that she lacks contacts with Arizona sufficient to subject her to the exercise of personal jurisdiction by an Arizona court. She acknowledged that after Danko "sought [her] out" and retained her "to represent him in a South Carolina family court matter," she represented him for a "very brief" period of "less than one month." She nonetheless argued that she "exclusively practices in South Carolina" and has never "directed any contacts towards Arizona specifically" that would warrant a finding that "jurisdiction is proper in Arizona."

¶4        In response, Danko conceded that Ameika resides in South Carolina and that he sought out the legal services of Ameika's law firm to enforce certain orders in South Carolina. He nonetheless argued that Ameika is subject to personal jurisdiction here because she entered into a "written contract" with him to "enforce Arizona orders of protection against [his] ex-spouse and [his] ex-mother-in-law." Ameika "promis[ed] to conduct the contractual services as agreed upon," he asserted, and he

"was counting on [her]" to "stop [the] abuse" that was being "committed by [his] ex-spouse." Ameika never enforced the orders of protection, Danko contended, and her inaction "assist[ed] and aid[ed]" his ex-wife and her mother to continue "to commit . . . abuse, batteries, assaults, and violence" against him. He further asserted that Ameika had "numerous contacts" with Arizona, arguing, in a conclusory fashion, that Ameika "has established himself [*sic*] in Maricopa County for years, with business contacts, relationships, and vast amounts of money exchanged for goods and services in said business." Danko attached various documents to his response, including a copy of his retainer agreement with Ameika, which lists her firm's South Carolina address and reflects that she was being retained to "enforce order of protection."

¶5        The superior court granted the motion to dismiss, finding that Danko made "zero factual allegations that [Ameika] directed any contacts towards Arizona specifically."[1] Noting that Danko made only "conclusory allegations" that Ameika "does business" in Arizona, the court dismissed the case with prejudice and awarded Ameika attorney fees under A.R.S. § 12-349.

¶6        Danko moved for reconsideration and, for the first time, requested an evidentiary hearing "to present evidence and proof of the facts" alleged in his complaint. The superior court denied both requests and entered final judgment.

¶7        Danko timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶8        Maintaining that "Arizona clearly has personal jurisdiction over" Ameika, Danko argues that the superior court erred in dismissing his

---

[1] In his opening brief, Danko argues that the superior court erred in addressing Ameika's motion to dismiss on the merits because, he contends, Ameika's motion was "untimely" and "should be stricken." The record reflects that the summons and complaint were served on August 17, 2023, and Ameika filed her motion to dismiss twenty days later, on September 6, 2023. Her motion was thus timely. *See* Ariz. R. Civ. P. 12(a)(1)(A)(i).

complaint.[2] In response, Ameika argues, first, that Danko has waived appellate review by failing to comply with ARCAP 13.

**¶9** ARCAP 13 requires, *inter alia*, an appellant to provide "citations of legal authorities and appropriate references to portions of the record on which the appellant relies." ARCAP 13(a)(7)(A). As Ameika notes, Danko's opening brief contains neither references to the record nor citations to legal authority. Although it includes a purported "table of citations" that lists fifteen cases by name, the table of citations does not identify, by name or volume number, the reporter in which any of those cases may be found. Moreover, Danko does not cite any of those cases in the body of his brief. Likewise, the table of citations lists various constitutional and statutory provisions that have no relevance to this case and are not cited in the body of the brief.[3] Danko's opening brief thus wholly fails to comply with ARCAP 13.

**¶10** Nonetheless, because Ameika never moved to strike Danko's opening brief under ARCAP 25 and, more important, because "resolution of cases on their merits is preferred," *DeLong v. Merrill*, 233 Ariz. 163, 166, ¶ 9 (App. 2013), we decline to hold that Danko has waived appellate review of all of the arguments raised in his brief. Instead, in the exercise of our discretion we address the substance of the arguments he raises to the extent they are developed sufficiently for us to do so. *See MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011) ("Merely mentioning an argument in an appellate opening brief is insufficient.").

**¶11** Ameika next argues that the superior court correctly determined that it "did not have general or specific jurisdiction over [her]" because she "was retained in South Carolina to provide legal services in South Carolina."

**¶12** To withstand a motion to dismiss for lack of personal jurisdiction, "the plaintiff must offer facts establishing a *prima facie* showing

---

[2] In the title of his opening brief (rather than in a separate filing as required by Arizona Rules of Civil Appellate Procedure ("ARCAP") 18(a)), Danko requests oral argument. We deny his request. *See* ARCAP 18(b).

[3] The table of citations lists, for example, the Fourth Amendment to the United States Constitution, which guarantees the right against unreasonable searches and seizures, and A.R.S. § 25-1034, which authorizes Arizona courts to exercise temporary emergency jurisdiction over abused and abandoned children. Those authorities have no bearing on any issue in this case.

of jurisdiction." *Beverage v. Pullman & Comley, LLC*, 232 Ariz. 414, 417, ¶ 10 (App. 2013). We view the facts in the light most favorable to the plaintiff but accept as true the uncontradicted facts put forward by the defendant. *See Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 226 Ariz. 262, 264, ¶ 2 n.1 (2011). Whether those facts establish the requisite minimum contacts is a question of law we review *de novo*. *Beverage*, 232 Ariz. at 417, ¶ 10.

¶13 Arizona courts may exercise personal jurisdiction over litigants "to the maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a). To satisfy constitutional requirements, the defendant must have "sufficient contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Planning Grp. of Scottsdale*, 226 Ariz. at 266, ¶ 14 (cleaned up).

¶14 Personal jurisdiction may be general or specific. *Id.* at 265, ¶ 13. General jurisdiction "extends to any and all claims brought against a defendant." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). "Only a select set of affiliations with a forum," however, "will expose a defendant to such sweeping jurisdiction." *Id.* An individual is subject to general jurisdiction "in her place of domicile," and a corporation is subject to general jurisdiction at "its place of incorporation and principal place of business." *Id.* at 358-59; *see also Planning Grp. of Scottsdale*, 226 Ariz. at 265, ¶ 13 (noting that "a state may exercise" jurisdiction over any cause of action brought against "its own citizens"). But a court cannot properly exercise general jurisdiction over a nonresident unless the nonresident's "level of contact" with the forum state is "quite high." *Williams v. Lakeview Co.*, 199 Ariz. 1, 3, ¶ 6 (2000). Indeed, a nonresident's contacts with the forum state must be so "continuous and systematic as to render [the nonresident] essentially at home" in the forum state. *Wal-Mart Stores, Inc. v. LeMaire*, 242 Ariz. 357, 359, ¶ 4 (App. 2017) (cleaned up).

¶15 Danko admits that Ameika is "an Arizona noncitizen," but insists that "it does not matter" that she "does not live" here. According to Danko, Ameika "does business in Maricopa County" and "has clients, business relationships, and provides services in Maricopa County."

¶16 Nothing in the record supports Danko's assertions about Ameika's purported business activities in Arizona. Even if true, however, these assertions would not establish that Ameika was "essentially at home" in Arizona, *Wal-Mart Stores*, 242 Ariz. at 359, ¶ 4, and so would not justify the exercise of general jurisdiction over her. This Court has held, for

example, that an Arizona court could not exercise general jurisdiction over a nonresident retailer with over 120 stores and over 33,000 employees in this state. *Id.* at 362-63, ¶¶ 21, 25. If an Arizona court cannot exercise general jurisdiction over a nonresident defendant with such an extensive commercial presence in this state, then an Arizona court surely lacks general jurisdiction over a nonresident attorney even if, as Danko alleges, that nonresident attorney has "clients" and "business relationships" here.

¶17 Specific jurisdiction "exists only for the particular claim asserted" and only when the defendant's "activities in the forum state giving rise to the claim establish the necessary minimum contacts with the state to make the exercise of jurisdiction reasonable and just." *Hoag v. French*, 238 Ariz. 118, 122, ¶ 19 (App. 2015). An Arizona court "may exercise specific personal jurisdiction" over a nonresident defendant "when the aggregate of the defendant's contacts with this state demonstrate (1) purposeful conduct by the defendant targeting the forum, . . . (2) a nexus between those contacts and the claim asserted and (3) that exercise of jurisdiction would be reasonable." *Beverage*, 232 Ariz. at 417, ¶ 9.

¶18 Danko's claims against Ameika arise out of her alleged inaction after he retained her to enforce orders of protection against his ex-spouse and ex-mother-in-law in South Carolina. Danko asserts that personal jurisdiction may properly be exercised over Ameika because she "knew full well," when she agreed to represent him, that he was an Arizona resident and that the orders she was being hired to enforce "against [his] ex-spouse in South Carolina" were issued by an Arizona court. Moreover, he contends, it was "in Maricopa County" that he suffered the "consequences" of Ameika's failure to "perform[] any of the contractual services [she] promised."

¶19 Danko's allegations, even if true, do not justify the exercise of specific jurisdiction. The fact that the plaintiff resides in the forum state "is not relevant to whether personal jurisdiction can be exercised over a non-resident defendant." *Smith & Wesson Corp. v. The Wuster*, 243 Ariz. 355, 359, ¶ 19 (App. 2017). Likewise, because Ameika was hired to enforce court orders in South Carolina, the state from which the orders originated has little bearing on the jurisdictional analysis. *See Baird v. Meyers, Roman, Friedberg, & Lewis, Co., LPA*, 700 F.Supp.3d 249, __, 2023 WL 7098821 at *6 (E.D. Pa. Oct. 27, 2023) ("When an out-of-state attorney works on an out-of-state matter for a client who happens to reside in the forum state, the forum contacts are clearly fortuitous, random, and attenuated, such that they are not truly directed toward the forum state.") (citation omitted). Further, the allegation that Ameika's failure to perform work in South Carolina caused

Danko to suffer harm in Arizona is not enough to subject her to specific jurisdiction here. *See Cohen v. Barnard, Vogler & Co.*, 199 Ariz. 16, 18, ¶ 10 (App. 2000) ("[W]hen the only nexus with the forum state is the effect of a damage-causing event, the requisite minimum contacts generally do not exist.").

¶20        Specific jurisdiction cannot be exercised over a nonresident defendant unless the plaintiff establishes, *inter alia*, that the defendant "engage[d] in purposeful conduct for which [the defendant] could reasonably expect to be haled into that state's courts with respect to that conduct." *Planning Grp. of Scottsdale*, 226 Ariz. at 268, ¶ 25. Such purposeful conduct may be found, for example, if the nonresident defendant solicited business within the forum state. *Id*. at ¶ 26 (affirming exercise of specific jurisdiction over nonresident defendants who "directed a series of telephone calls, e-mails, faxes, and letters to the Arizona plaintiffs, seeking to persuade the plaintiffs to invest in [their] venture"). The record here establishes, however, that Ameika did not solicit a professional relationship with Danko. On the contrary, by Danko's own admission, he sought out her legal services. Simply agreeing to enforce orders of protection on Danko's behalf in South Carolina does not establish that Ameika engaged in purposeful conduct directed toward Arizona. *See Hoag*, 238 Ariz. at 123, ¶ 24 (holding that Arizona court could not exercise specific jurisdiction over nonresident defendant serving as trustee of trust established by Arizona resident; the nonresident's "accept[ance]" of "the appointment as trustee" was not "equivalent to actively soliciting business in Arizona, and is an insufficient basis for Arizona to obtain personal jurisdiction"); *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 292 (1st Cir. 1999) ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship—say, by solicitation—the mere fact that the defendant willingly entered into a tendered relationship does not carry the day.") (citation omitted).

¶21        Danko also claims to have been the victim of various intentional torts and crimes, all of which he blames on Ameika, including "continuous stalking, break ins, thefts, assaults and batteries, and more." Danko maintains that "Defendants"—a puzzling use of the plural, since Ameika is the only defendant in this case—"covered up and concealed crimes committed by [his] ex-spouse's family" and that she is therefore liable for those crimes. Personal jurisdiction over a nonresident defendant cannot, however, be premised on the actions of third parties. *Williams*, 199 Ariz. at 3, ¶ 7 (recognizing that "specific jurisdiction . . . does not arise from . . . a third party's unilateral activity"). Acts of violence committed by Danko's ex-spouse and her family members cannot support the exercise of

personal jurisdiction over Ameika. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[I]t is *the defendant's conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.") (emphasis added); *see also Karsten Mfg. Corp. v. U.S. Golf Ass'n*, 728 F. Supp. 1429, 1434 (D. Ariz. 1990) (citing case law for the proposition that "personal jurisdiction over any non-resident individual must be premised upon forum-related acts personally committed by the individual").

¶22   Danko accuses Ameika of personally committing intentional torts against him, including "defamation, slander, and libel," which, he contends, subjects her to personal jurisdiction in Arizona. Just as "Defendants [*sic*] would not escape jurisdiction from Arizona" if "Defendants [*sic*] murdered a citizen in Arizona," he argues, Ameika's alleged commission of intentional torts against him justifies an Arizona court's exercise of personal jurisdiction over her.

¶23   Danko identifies no specific statement made by Ameika that purportedly defamed him except for his allegation that "[Ameika] claimed [Danko] to be a resident with him [*sic*] in South Carolina." Even assuming that Ameika made a false statement to the effect that Danko resides in South Carolina, such a statement is hardly defamatory, and so could not possibly support an actionable claim. *See Dube v. Likins*, 216 Ariz. 406, 419, ¶ 43 (App. 2007) ("Whether a statement is capable of defamatory meaning is a question of law for the court."). And even assuming that Ameika made some sort of statement about Danko that was capable of a defamatory meaning, neither Danko's opening brief nor his complaint include any allegations about *where*, *when*, or *to whom* the statement was made. Danko's cursory and non-specific allegations of "defamation, slander, and libel" are insufficient to permit an Arizona court to assert personal jurisdiction over Ameika. *See In re Consolidated Zicam Product Liab. Cases*, 212 Ariz. 85, 89-90, ¶ 8 (App. 2006) ("When the defendants moved to dismiss the complaints for lack of personal jurisdiction, . . . [t]he plaintiffs could not rest on the bare allegations of their complaints; they had to come forward with facts supporting personal jurisdiction.").

¶24   Danko also argues that he was wrongly denied the opportunity to present evidence at a hearing. He did not request an evidentiary hearing until after the court granted Ameika's motion to dismiss, however, and so failed to preserve this claim for appeal. *See A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 568 (1995).

¶25   Ameika requests reasonable attorney fees and costs pursuant to A.R.S. § 12-349 and ARCAP 25.

¶26        As relevant here, sanctions are required under A.R.S. § 12-349(A) if a party brings a claim "without substantial justification." A.R.S. § 12-349(A)(1). A claim is brought without substantial justification if it is "groundless" and "not made in good faith." A.R.S. § 12-349(F). Groundlessness and lack of good faith are both determined by reference to an objective standard, *i.e.*, "what a professional, competent attorney would do in similar circumstances." *Ariz. Republican Party v. Richer*, 547 P.3d 356, 368, ¶ 40 (2024) (cleaned up). The fact that Danko is not an attorney (as far as the record shows) does not permit us to evaluate his conduct under a more lenient standard; Arizona courts "hold unrepresented litigants in Arizona to the same standards as attorneys." *Flynn v. Campbell*, 243 Ariz. 76, 83, ¶ 24 (2017).

¶27        Factors that a court should consider in determining whether to impose sanctions under A.R.S. § 12-349 include "[t]he extent of any effort made to determine the validity of a claim before the claim was asserted," "[t]he availability of facts to assist a party in determining the validity of a claim or defense," and "[w]hether issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict." A.R.S. § 12-350(1), (3), (6). Sanctions may properly be imposed under A.R.S. § 12-349 not only on a litigant who pursues a claim knowing that it is frivolous, but also on a litigant who proceeds in disregard of a claim's merit or lack thereof. *See Richer*, 547 P.3d at 367, ¶ 38 ("[A] party's indifference to a claim's invalidity may constitute the absence of good faith" required by A.R.S. § 12-349(A)(1).).

¶28        Before Danko filed his notice of appeal in this matter on November 27, 2023, this Court had already affirmed the dismissal, for lack of personal jurisdiction, of at least four separate complaints Danko filed against other South Carolina attorneys. *See Danko v. Hawkins*, 1 CA-CV 22-0781, 2023 WL 7164310 (Ariz. Ct. App. Oct. 31, 2023) (mem. decision) (consolidated with *Danko v. Stevens*, 1 CA-CV 23-0001, and *Danko v. Seibert*, 1 CA-CV 23-0149); *Danko v. Strom*, 1 CA-CV 22-0583, 2023 WL 5977229 (Ariz. Ct. App. Sept. 14, 2023) (mem. decision). In each of those cases, Danko alleged, as he does here, that he retained the attorneys to enforce, in South Carolina, orders issued by an Arizona court. *See Hawkins*, 2023 WL 7164310 at *3, ¶ 17 ("Danko hired the South Carolina based Attorneys to enforce provisions of his Arizona dissolution decree in South Carolina after his ex-wife relocated to South Carolina."); *Strom*, 2023 WL 5977229 at *2, ¶ 8 ("Danko's allegations against Strom stem from his attempt to retain her as a South Carolina attorney to pursue legal claims against his ex-spouse in that state."). In each of those cases, the jurisdictional arguments Danko raised were expressly rejected. *See Hawkins*, 2023 WL 7164310 at *3, ¶ 17

("Danko explicitly and admittedly hired the Attorneys to perform legal work targeted at South Carolina. That Danko allegedly suffered harm in Arizona is not enough" to justify "the exercise of personal jurisdiction."); *Strom*, 2023 WL 5977229 at *2, ¶¶ 8-9 ("Danko's allegations against Strom stem from his attempt to retain her as a South Carolina attorney to pursue legal claims against his ex-spouse in that state." Because "nothing in the record suggests that she directed her legal services to Arizona clients . . . the superior court did not err by dismissing Danko's complaint for lack of personal jurisdiction."). This Court's prior rulings, therefore, put Danko on notice, before he initiated this appeal, that an Arizona court cannot exercise personal jurisdiction under the facts presented here. Danko nonetheless continued to pursue this appeal, re-asserting the same arguments that had already been resolved against him.

¶29 Moreover, Danko's briefs are filled with unsubstantiated and insulting allegations that are irrelevant to the jurisdictional issues raised in this appeal. Among other things, Danko accuses Ameika (without elaboration) of "predatory" behavior and of "lying and submitting false statements to the legal system and authorities." And his briefing repeatedly refers to Ameika using plural terms (*e.g.*, "Defendants") and masculine pronouns, which suggests that portions of his briefs have been cut-and-pasted, with little or no editing, from briefs in his prior unsuccessful appeals. By continually re-asserting the same claims against South Carolina attorneys in Arizona courts, re-raising the same arguments that have already been considered and rejected, Danko has exhibited precisely the kind of "indifference to a claim's validity" that warrants the imposition of sanctions under A.R.S. § 12-349(A). *See Richer*, 547 P.3d at 367, ¶ 38.

¶30 Accordingly, we award Ameika reasonable attorney fees and taxable costs on appeal as a sanction under A.R.S. 12-349, contingent upon Ameika's compliance with ARCAP 21. In determining the reasonableness of the fee award, we will consider, *inter alia*, "[t]he relative financial positions of the parties" and "[t]he amount and conditions" of any settlement offers made by either party, *see* A.R.S. § 12-350(4), (8), if the parties submit affidavits or other evidence relevant to those matters. *See Woerth v. City of Flagstaff*, 167 Ariz. 412, 420 (App. 1990) (stating that court cannot properly consider "[u]nsworn and unproven assertions" in determining fee request).

## CONCLUSION

¶31        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV